No. 232          April 1, 2026          61

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Gary GODON,
*Plaintiff-Respondent,*

*v.*

Bend-CDJR, LLC,
dba Lithia Chrysler Dodge Jeep Ram of Bend,
and Travelers Casualty and Surety Company of America,
*Defendants-Appellants.*

Multnomah County Circuit Court
23CV33092; A184256

Adrian L. Brown, Judge.

Argued and submitted November 19, 2025.

Alexandra P. Hilsher argued the cause for appellants. Also on the briefs was Hershner Hunter, LLP. Also on the opening brief was Elizabeth M. Stubbs.

Young Walgenkim argued the cause for respondents. Also on the brief was Hanson & Walgenkim, LLC.

Emily Teplin Fox filed the brief *amicus curiae* for Oregon Trial Lawyers Association.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

SHORR, P. J.

Vacated and remanded.

**SHORR, P. J.**

Defendants Bend-CDJR, LLC dba Lithia Chrysler Dodge Jeep Ram of Bend (Lithia) and Travelers Casualty and Surety Company of America (Travelers) appeal from an interlocutory order denying defendants' motion to compel arbitration of plaintiff Gary Godon's claims arising out of plaintiff's purchase of a vehicle from defendant Lithia.[1] On appeal, defendant assigns error to the trial court's denial of the motion to compel arbitration. We conclude that the trial court applied an incorrect legal analysis and the record is insufficient to affirm on the alternative basis presented below. Therefore, we vacate and remand.

## BACKGROUND

In 2023, plaintiff filed a complaint in circuit court alleging that defendant failed to disclose that the used vehicle plaintiff purchased from defendant had been underwater at some point in the past. Defendant provided plaintiff notice of intent to enforce the arbitration agreement between the parties if plaintiff did not voluntarily dismiss his suit in court. The parties did not agree to proceed to arbitration and defendant then filed a motion to compel arbitration.

As part of the vehicle purchase, the parties signed a delivery agreement that contained an arbitration agreement between the parties. The arbitration agreement was made "pursuant to the Federal Arbitration Act," and provided that all claims arising out of or relating to the vehicle purchase would be "settled by binding arbitration in accordance with the rules of the American Arbitration Association." The agreement also contained certain discovery limitations and a delegation provision providing that "[a]ny dispute as to the validity, existence, scope, jurisdiction, or applicability of this arbitration agreement shall be arbitrated and decided by the arbitrator."

In the trial court, plaintiff opposed arbitration on various grounds including arguing that the arbitration agreement was not formed because it contains an illusory

---

[1] Defendant Travelers' only role in the litigation is as Lithia's bond company. All references hereafter to defendant are to defendant Lithia, and for convenience, we refer to defendant in the singular.

promise, or even if formed, that it is unconscionable. Plaintiff also argued that the delegation clause itself is unconscionable. After considering the parties' written and oral arguments, the trial court denied defendant's motion to compel arbitration. The court explicitly "[did] not make any findings as to whether the delegation clause in the Agreement is itself unconscionable." Instead, the court determined that the agreement as a whole was unconscionable and denied the motion to compel on those grounds.[2]

On appeal, the parties appear to agree that by considering the unconscionability of the arbitration agreement as a whole—before first considering formation defects and specific challenges to the delegation clause—the trial court did not follow the correct framework in deciding the motion to compel arbitration. As we explain further below, we agree that the trial court followed the incorrect framework by *first* considering the validity of the entire agreement before considering issues of formation and challenges to the delegation clause. Plaintiff asserts that we can nevertheless affirm the trial court's decision either because the arbitration agreement was not properly formed or, if it was properly formed, because the delegation provision is unconscionable. Defendant contends that the parties formed an agreement to arbitrate and the delegation clause is not unconscionable, and therefore, an arbitrator must determine the validity of the arbitration agreement as a whole. We review the denial of a motion to compel arbitration for legal error. *Citigroup Smith Barney v. Henderson*, 241 Or App 65, 69, 250 P3d 926 (2011).

## LEGAL FRAMEWORK

Section 2 of the Federal Arbitration Act (FAA) provides:

> "A written provision in *** a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction *** shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

---

[2] The trial court concluded that the arbitration agreement was unconscionable because of the discovery limitations, the requirement that the parties bear their own attorney fees at arbitration, and its nonmutuality.

9 USC § 2. That section "creates a body of federal sub-stantive law of arbitrability, which applies even in the con-text of state-law claims brought in state courts." *Lumm v. CC Services, Inc.*, 290 Or App 39, 44, 414 P3d 454 (2018) (internal quotation marks omitted). Under the FAA, arbi-tration is fundamentally "a matter of contract," and accord-ingly, "a matter of consent." *Coinbase, Inc. v. Suski*, 602 US 143, 147-48, 144 S Ct 1186, 218 L Ed 2d 615 (2024). When the parties dispute the formation of an agreement, the court, and not an arbitrator, must decide that threshold question. *Cornelio v. Premere Rehab, LLC*, 342 Or App 399, 404-05, 577 P3d 847, *rev den*, 374 Or 616 (2025); *see also Granite Rock Co. v. International Broth. of Teamsters*, 561 US 287, 296, 130 S Ct 2847, 177 L Ed 2d 567 (2010) ("[W] here the dispute at issue concerns contract formation, the dispute is generally for courts to decide.").

The issue of contract formation is different than the issue of a contract's validity. *Rent-a-Center, West, Inc. v. Jackson*, 561 US 63, 70 n 2, 130 S Ct 2772, 177 L Ed 2d 403 (2010); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 US 440, 444 n 1, 126 S Ct 1204, 163 L Ed 2d 1038 (2006) (suggesting that contract formation argu-ments include "whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the men-tal capacity to assent" (citations omitted)). Determining con-tract formation is always an issue for the court, even in the presence of a delegation provision. *Coinbase*, 602 US at 145; *see also Johnson v. Continental Finance Company, LLC*, 131 F4th 169, 175 (4th Cir 2025) ("It would put the cart before the horse to enforce any provision of [an arbitration] agreement, including the delegation clause, before deciding whether the agreement itself was ever formed."). But if an agreement has been formed, the parties can agree to delegate the issue of contract validity to an arbitrator. *Coinbase*, 602 US at 148. Such a delegation provision is simply an additional, anteced-ent agreement to arbitrate threshold issues that is subject to the FAA like any other arbitration agreement. *Rent-a-Center*, 561 US at 68-70. Thus, if the parties formed an arbitration agreement and it contains a provision delegating issues of contract validity to the arbitrator, a court must enforce that

provision unless the party opposing arbitration successfully challenges the validity of the delegation provision itself. *Id.*

In light of the foregoing legal principles, we conclude that the trial court, by denying the motion to compel arbitration based on the unconscionability of the agreement as a whole, erred when it applied the incorrect framework. As the issue was presented here, the trial court should have first considered whether an agreement to arbitrate was formed between the parties. If an agreement was formed, it should have next considered any challenges to the delegation provision specifically. Finally, only if the delegation provision is invalid should the trial court have considered challenges to the validity of the arbitration agreement as a whole. Otherwise, if the delegation provision was valid, challenges to the validity of the arbitration agreement are left to the arbitrator. As we discuss further below, we remand to the trial court to return to the first step and consider whether the parties reached an agreement to arbitrate, which, in light of the particular arguments presented, raises some factual issues for the trial court to resolve first.

## ANALYSIS

As noted, both parties agree on appeal that the trial court erred by skipping steps in the analysis. On appeal, plaintiff argues that we should nevertheless affirm on the alternative basis that the analysis fails at the formation step either because the arbitration agreement was fraudulently induced or because it is an illusory contract. Plaintiff encourages us to resolve those issues now. Defendant contends that those are more properly understood as issues of validity rather than formation and therefore should not be addressed at this step of the analysis.[3] As defendant also points out, plaintiff never raised the fraudulent inducement argument in the trial court, and therefore we do not discuss it further here, except to note that the United States Supreme Court has at least suggested that fraud in the inducement is an issue of validity that may be delegated to an arbitrator under a delegation

---

[3] The line between validity and formation has not been clearly defined. We have previously addressed a more obvious formation defect where a nonsignatory third party sought to enforce an arbitration agreement and we concluded that the plaintiff had never formed an agreement to arbitrate with that third party. *Cornelio*, 342 Or App at 405-06.

provision. *See Rent-a-Center*, 561 US at 71 (discussing fraud in the inducement in the context of contract validity).

We turn now to plaintiff's argument that the agreement to arbitrate was illusory. Because at this step we may only address whether an agreement was formed, we must first determine whether an illusoriness challenge pertains to contract formation or validity.[4] Plaintiff contends that it is a formation issue because the formation of a contract requires consideration, and an illusory promise cannot serve as consideration. In response, defendant asserts that, although plaintiff frames his argument in terms of contract formation, he fundamentally argues that the agreement is one-sided, which is an issue of validity.

Under Oregon law, the formation of a contract requires consideration. *Homestyle Direct, LLC v. DHS*, 354 Or 253, 262, 311 P3d 487 (2013). "An exchange of promises is consideration that will support a contract." *Shea v. Begley*, 94 Or App 554, 558, 766 P2d 418 (1988), *rev den*, 307 Or 514 (1989); *Restatement (Second) of Contracts* § 71 (1981) (defining "consideration" as a performance or return promise "sought by the promisor in exchange for his promise" and "given by the promisee in exchange for that promise"). Where one party has unlimited discretion to avoid its obligations, that party's promise is illusory. *Furrer v. Southwestern Oregon Community College*, 196 Or App 374, 380, 103 P3d 118 (2004); *see also Restatement* § 77 comment a ("Where the apparent assurance of performance is illusory, it is not consideration for a return promise."); 3 *Williston on Contracts* § 7:11 (4th ed) ("Where no consideration exists, and is required, * * * a

---

[4] The federal circuits are split on this issue, with most circuits concluding that illusoriness pertains to formation. *See Johnson v. Continental Finance Company*, 131 F4th 169, 178 (4th Cir 2025) (explaining that illusoriness challenges pertain to formation because an agreement consisting of illusory promises lacks consideration); *Reichert v. Rapid Investments, Inc.*, 56 F4th 1220, 1227 (9th Cir 2022) (explaining that a challenge to an agreement for lack of consideration is a formation question for the court); *Doctor's Associates, Inc. v. Alemayehu*, 934 F3d 245, 252 (2d Cir 2019) (concluding that because consideration is fundamental to contract formation, it is an issue reserved for the court); *National Federation of the Blind v. The Container Store*, 904 F3d 70, 86 (1st Cir 2018) (explaining that an illusory contract is never formed because it lacks the necessary consideration); *but see Arnold v. Homeaway, Incorporated*, 890 F3d 546, 550-51 (5th Cir 2018) (where the parties do not dispute the existence of an agreement but rather argue that there is an illusory promise that renders the agreement unenforceable, that is more properly understood as "in the nature of a validity challenge").

lack of consideration results in no contract being formed."); *Johnson*, 131 F4th at 178 ("It is rudimentary contract law that an agreement lacks consideration, and is therefore never formed, when it consists entirely of illusory promises."). As the foregoing legal principles explain, consideration is required to create a binding contract. A contract based on an illusory promise lacks consideration, a fundamental element of contract formation. Therefore, illusoriness is a formation issue that is reserved for the court.

We turn next to whether the arbitration agreement was illusory in this case. In *Furrer*, we favorably quoted the following definition of an illusory agreement:

"'Words of promise which by their terms make performance entirely optional with the "promisor" whatever may happen, or whatever course of conduct in other respects he may pursue, do not constitute a promise. Although such words are often referred to as forming an illusory promise, they do not fall within the present definition of promise. They may not even manifest any intention on the part of the promisor. Even if a present intention is manifested, the reservation of an option to change that intention means that there can be no promisee who is justified in an expectation of performance.'"

196 Or App at 380 n 1 (quoting *Restatement* § 2 comment e). As we understand plaintiff's argument, defendant's promise to arbitrate was illusory because defendant either knew at the time that it could not be enforced—or perhaps should have known—and it had the option to evade arbitration at will. In other words, plaintiff contends that there was no manifest intent on the part of the promisor, defendant, to follow through on its promise to arbitrate. Plaintiff points out that in 2015, the American Arbitration Association (AAA) had declined to administer a case under an identical arbitration agreement involving another Lithia dealership in Oregon because the discovery limitations in the agreement did not meet AAA's consumer due process protocol. Before declining the case, AAA asked that dealership to waive the discovery limitations, which it refused to do. Plaintiff asserts that, because of the other Lithia dealership's prior history with AAA, defendant either knew or should have known it could avoid arbitration with a consumer at will by

refusing to waive the discovery limitations, rendering any agreement to arbitrate illusory.

Plaintiff's formation argument turns on defendant's knowledge of its arbitration agreement's deficiencies.[5] To agree with plaintiff that the agreement was illusory would require us to assume that defendant knew its arbitration agreement would be rejected by AAA. Here, as noted, the trial court erred in its legal analysis and failed to find critical facts regarding the formation of the agreement necessary to resolve the question of illusoriness. The court's factual findings are limited to finding that the arbitration agreement at issue in this case is a standard form used by "Lithia Bend/Lithia Motors," that has been in use since at least 2015, and that it had been previously rejected by AAA in a case litigated by plaintiff's counsel's firm and involving a Lithia dealership in Eugene. The trial court did not find that defendant knew of that prior rejection that involved the other Lithia dealership. Moreover, we have reviewed the record on appeal and conclude that, although plaintiff presented certain facts regarding Lithia's corporate structure and AAA's dealings with other Lithia entities, it is at least not clear from the record whether defendant knew that its arbitration agreement would be rejected by AAA. "When a party argues an alternative basis to affirm that was raised but not resolved in the trial court, and factual findings are necessary to decide the legal question, we will ordinarily remand to the trial court to determine potentially dispositive questions of fact in the first instance." *State v. Derby*, 301 Or App 134, 141, 455 P3d 1009 (2019) (internal quotation marks omitted); *see also State v. Castillo*, 295 Or App

_____

[5] Plaintiff asserts that defendant, as a subsidiary acting on behalf of its parent company, "should have known that the arbitration agreement did not meet AAA's minimum standards of due process when it required [plaintiff] to sign it." First, it is not clear to us whether the fact that defendant "should have known" about AAA's issues with a standard form Lithia arbitration agreement is sufficient to make defendant's promise to arbitrate illusory. Defendant's arguments are not well-developed. Even assuming for argument that it is sufficient, to the extent that plaintiff argues that defendant "should have known" of AAA's prior rejection by virtue of the corporate structure or agency law, those arguments are also not well-developed, and we are unpersuaded that the facts in the record are sufficient to allow us to make that determination. *See, e.g.*, *Cerner Middle East Ltd. v. Belbadi Enterprises LLC*, 305 Or App 413, 419 n 7, 472 P3d 299, *rev den*, 367 Or 257 (2020) (referencing the "general rule that a subsidiary and the parent are separate entities").

121, 132-33, 433 P3d 467 (2018), *rev den*, 364 Or 749 (2019) (remanding for trial court to determine an issue that had been raised but not resolved in the trial court, that was presented on appeal as an alternative basis to affirm, but required factual findings to resolve).

Accordingly, we vacate and remand for the trial court to apply the correct legal analysis and make the required factual findings in the first instance.

Vacated and remanded.